CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
May 07, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSHUA BLAKE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:24-cv-683 |
| v. ) | |
| ) | |
| WALMART, INC., et al. ) | By: Hon. Robert S. Ballou |
| ) | United States District Judge |
| Defendants. ) | |

## OPINION

Plaintiff Joshua Blake brings this action against defendants Walmart, Inc. and Walmart-Stores East, LP (collectively "Walmart") alleging violations under Title VII and the Virginia Human Rights Act. He also asserts a so-called *Bowman* claim (Count VII) under Virginia common law. A cognizable *Bowman* claim reflects a narrow exception to the Virginia employment-at-will doctrine in favor of at-will employees discharged in violation of an established public policy. Here, Blake's allegations do not fall within this narrow exception because the criminal statutes he relies upon do not create any statutory right or public policy that support a *Bowman* claim, and thus, Count VII is **DISMISSED**.

I.   **Background**

On a motion to dismiss, the Court accepts as true the facts set forth in the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint includes many factual allegations related to Blake's other claims, but this opinion primarily focuses on those facts relevant to Count VII - the *Bowman* claim.

A.   **Factual Allegations**

Walmart hired Blake as a Loss Prevention Manager at a store in Roanoke, Virginia, in February 2020. Compl. ¶¶ 27, 28, Dkt. 1. Blake, who is African-American, experienced racial

discrimination and retaliation from his White supervisor while at the Roanoke Store, but in October 2021, Walmart transferred him to Rocky Mount, Virginia and promoted him to Asset Protection Operations Coach. *Id.* at ¶¶ 66–72. However, Blake alleges the racial discrimination and retaliation continued. In June 2023, Walmart manager Susan Hodges offered Blake candy, which he believed were "normal gummies." *Id*. at ¶¶ 146-47. After eating the candy, Hodges asked Blake, "do you know what you ate?", to which he responded, "yes, just gummies, right?" *Id*. at ¶¶ 148-49. Hodges laughed and said, "you will see." *Id*. at ¶ 150. Beginning about an hour after consuming the gummies, Blake "began not to be able to control his movements" and the effects became "so unbearable" that he called 911 and was taken to the hospital. *Id.* at ¶¶ 151-52. Blake suspected the gummies contained THC, which he reported to the police. He also notified "Walmart's Ethics department that he had been drugged by Ms. Hodges." *Id.* at ¶¶ 154-55. On September 9, 2023, Walmart terminated Blake's employment for "allegedly making an inappropriate comment" to a female coworker, which he claims was a pretextual ground for termination. *Id.* at ¶¶ 163, 201.

In his *Bowman* claim, Blake alleges that Walmart wrongfully terminated him in violation of Virginia public policy, stating he "engaged in protected activity" when he notified the police and Walmart's Ethics Hotline of the violations of Va. Code §§ 18.2-54.1, 18.2-54.2, and 18.2-57.[1] Compl. ¶ 200. These Virginia criminal statutes make administering poison or adulterating substances with the intent to kill or injure another a Class 3 felony, and specify penalties for assault, including when the victim is selected because of his race.[2] Blake alleges Walmart

---

[1] The other causes of action Blake asserts against Walmart, in addition to the *Bowman* claim, are federal claims for race discrimination, retaliation, and a hostile work environment under Title VII (Counts I, II, and III), and state law claims for race discrimination and retaliation under the Virginia Human Rights Act (Count V and VI). The Complaint does not contain a Count IV.

[2] Virginia Code § 18.2-54.1 makes it a Class 3 felony to attempt to administer poison through food, drink, medication, or a water supply, with the intent to kill or injure another person. Virginia Code § 18.2-54.2 makes it a

2

retaliated against him "for opposing these statutory violations" by terminating his employment. *Id.* ¶ 201.

### B. Motion to Dismiss

Walmart moves to dismiss the *Bowman* claim for failure to state a claim under Rule 12(b)(6). Dkt. 5, 10. Emphasizing that the courts have construed *Bowman* claims narrowly, Walmart points out that Blake fails to identify any cases showing these statutes express a public policy sufficient to support his *Bowman* claim. Walmart also argues that criminal statutes, Va. Code §§ 18.2-54.1, 18.2-54.2, and 18.2-57, provide their own criminal penalties for violations, and thus cannot form the basis of a *Bowman* claim.

Blake argues that Virginia Code §§ 18.2-54.1, 18.2-54.2, and 18.2-57 are consistent with the public policy of the Commonwealth to "protect individuals from being poisoned, consuming adulterated food, and protect individuals from assault and battery" as a "safety and welfare concern." Dkt. 12 at 7. Blake provides several Virginia circuit court cases in support of his argument that statutory remedies do not preclude a wrongfully discharged employee from pursuing a *Bowman* claim, asserting these "statutory remedies are not exclusive." Dkt. 12 at 5.

### II.   Standard of Review

When ruling on a motion to dismiss, the court accepts the plaintiff's well-pleaded allegations as true and views the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the

---

Class 3 felony to adulterate any substance with the intent to kill or injure any person who ingests, inhales, or uses the substance. Virginia Code § 18.2-57 sets out the penalties for assault and battery, and specifically the penalties when the person committing the assault selects the victim of the assault because of his race or other protected class.

right "plausible on its face" rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**III.     Law & Analysis**

A *Bowman* claim stems from the Supreme Court of Virginia's decision in *Bowman v. State Bank of Keysville,* 331 S.E.2d 797 (Va. 1985), when that court first recognized an exception to the employment-at-will doctrine, in favor of at-will employees who claim to have been discharged in violation of an established public policy. In *Bowman*, the employer discharged two employee stockholders in retaliation for their refusal to vote their stock in the way management demanded. The Supreme Court of Virginia held the employer liable in tort for the wrongful discharge because the employer's coercion violated the policy underlying Virginia Code § 13.1-32, which conferred on the employees as stockholders the right to vote "free of duress and intimidation" by corporate management, stating:

> Because the right conferred by statute is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation.

*Bowman,* 331 S.E.2d at 801. Two years later, in *Miller v. SEVAMP, Inc.* the Supreme Court of Virginia emphasized:

> *Bowman* recognized an exception to the employment-at-will doctrine limited to discharges which violate *public* policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general . . . The exception we recognized was not so broad as to make actionable those discharges of at-will employees which violate only private rights or interests.

362 S.E.2d 915, 918 (Va. 1987). The Supreme Court of Virginia continues to characterize the *Bowman* exception as "narrow" observing that "termination of an employee in violation of the

4

policy underlying any one [statute] does not automatically give rise to a common law cause of action for wrongful discharge." *City of Virginia Beach v. Harris,* 523 S.E.2d 239, 245 (Va. 2000). In fact, in only three circumstances has the Virginia Supreme Court found that "the claims were sufficient to constitute a common law action for wrongful discharge under the public policy exception," i.e. a cognizable *Bowman* claim: (1) where an employer discharged an employee for exercising a statutorily created right; (2) when the public policy is "explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy;" or (3) "where the discharge was based on the employee's refusal to engage in a criminal act." *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 710 (Va. 2002).

### A. Virginia Statutes on Poisoning, Adulterating Food, and Assault and Battery

Blake asserts that Virginia Code §§ 18.2-54.1, 18.2-54.2, and 18.2-57 are consistent with the public policy of the Commonwealth to "protect individuals from being poisoned, consuming adulterated food, and protect individuals from assault and battery" as a "safety and welfare concern." Dkt. 12 at 7. Blake argues that when he reported the violation of these statutes to the police and Walmart, he "engaged in protected activity" and thus, when Walmart terminated him for reporting these violations, Walmart violated Virginia common law, giving rise to a *Bowman* claim. Dkt. 12 at 7.

Like all criminal statutes, Virginia Code §§ 18.2-54.1, 18.2-54.2, and 18.2-57, have an underlying policy of the protection of the public's safety and welfare. *Harris*, 523 S.E.2d at 246 citing *Miller,* 362 S.E.2d at 918. However, Blake's conclusion that termination for reporting a suspected poisoning contravenes that public policy and falls within the narrow exception to at-will employment misses the mark. Blake's arguments for finding a public policy in these

5

criminal statutes resemble those made by the plaintiff in *Rowan,* which the Supreme Court of Virginia rejected. 559 S.E.2d at 710. In *Rowan,* this district certified a question to the Supreme Court of Virginia regarding whether the criminal obstruction of justice statute supported a *Bowman* claim, writing:

> Frankly, the serpentine evolution of *Bowman* claims in recent state and federal court decisions leaves me perplexed. Although some cases have held that criminal statutes may provide the public policy foundation needed for *Bowman* claims, these all have been ones where the employer seeks to force the employee to violate the statute at issue. This is not the situation here. Instead, Plaintiff invokes a criminal statute because the manner in which Defendant constrained the employee's choice concerning whether to press charges against a co-worker violated the public policy undergirding the criminal prohibition against obstruction of justice. Thus, under existing Virginia precedent, it is unclear whether Plaintiff states a *Bowman* claim vis-a-vis Va. Code § 18.2–460.

*Rowan v. Tractor Supply Co.*, No. 7:00-CV-00467-JLK-GC, 2001 WL 35840128, at *9 (W.D. Va. June 6, 2001), *certified question answered*, 559 S.E.2d 709 (Va. 2002). After discussing the various cases on point, the district court concluded it required an answer to a question relevant here:

> The Virginia Supreme Court cases on point do not clearly answer whether Plaintiff can ground her *Bowman* claim on a criminal statute where she does not allege that she was fired for resisting the employer's coercion to violate the statute, but instead claims that the employer's behavior violated the public policy expressed in the criminal statute. This issue is determinative, as Plaintiff's entire remaining case stands or falls on the answer to this question.

*Id.* The Supreme Court of Virginia held the criminal obstruction of justice statute did "not grant a person involved in a criminal prosecution any specific right" and no *Bowman* claim existed.[3]

---

[3] The Court wrote:

> As a person involved in a criminal prosecution, Rowan argues that, to effectuate the public policy she posits, the statute must provide her with a right to such protection and the violation of such right by her employer is a violation of public policy sufficient to support her common law cause of action. We disagree with Rowan.

*Rowan*, 559 S.E.2d at 711. The Court distinguished its ruling in *Bowman v. State Bank of Keysville,* explaining that in that case the public policy violated existed to protect the exercise of a statutory right–specifically "the shareholders right to vote shares granted by the statute." *Id.* But the obstruction of justice statutes at issue in *Rowan* provided "no statutory right and, therefore, there exists no corresponding public policy necessary to protect the right."[4] *Id.*

The same reasoning applies here. Unlike the shareholders right in *Bowman* to vote their shares free of coercion from their employer, Virginia Code §§ 18.2-54.1, 18.2-54.2, and 18.2-57, do not grant any specific rights, and as there is no statutory right, there is no corresponding public policy. Further, the Supreme Court of Virginia has made clear that just because criminal statutes have an underlying policy of the protection of the public's safety and welfare, that does not necessarily support a *Bowman* claim. *Harris*, 523 S.E.2d at 246 (finding no established public policy underlying criminal code § 18.2–460 (obstruction of justice) that would support a *Bowman* claim). Because the criminal code sections relied on by Blake do not create a specific statutory right or corresponding public policy that would support applying an exception to the employment-at-will doctrine, no *Bowman* claim exists.[5]

---

*Rowan*, 559 S.E.2d at 711.

[4] Blake points to the Virginia Circuit Court case *Gochenour v. Beasley*, 47 Va. Cir. 218 (1998) to support his argument that the victim of a crime can bring a *Bowman* claim based on violations of criminal statutes. In *Gochenour*, the plaintiff's employer had placed a small camera under her desk, so that he could view her underwear. Upon discovery of the camera, the plaintiff quit. The court found this was a constructive discharge and held that plaintiff stated a *Bowman* wrongful termination claim. Acknowledging there was "little precedent" on the issue, the court directly considered the question of "whether a criminal statute is a 'clearly articulated public policy' upon which a wrongful termination claim can be premised." *Id.* Citing to precedent primarily from other states, the *Gouchener* court held that the "penal statutes of the Commonwealth of Virginia articulate a public policy that may be a sufficient basis for a *Bowman* wrongful termination claim." *Id.* However, while *Gouchenor* holds that the public policy in a criminal statute can support a *Bowman* claim, it does not follow that every criminal statute contains public policy supporting a *Bowman* claim. Further, this case was decided prior to *Rowan,* and I find the reasoning in *Rowan,* from the Supreme Court of Virginia, both more persuasive, and of course, controlling.

[5] Accordingly, I need not address Walmart's argument that criminal statutes, Va. Code §§ 18.2-54.1, 18.2-54.2, and 18.2-57, provide their own criminal penalties for violations, and thus cannot form the basis of a *Bowman* claim.

## IV. Conclusion

For the reasons set forth in this Opinion, Walmart's partial motion to dismiss is granted, and the *Bowman* claim is dismissed. An appropriate Order accompanies this Memorandum Opinion.

Entered: May 7, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge